UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **PLAZA MEMBER III, LLC,** and </br></br>**LAND DYNAMICS, INC.,** </br></br>    **Plaintiffs/** </br>    **Counterclaim Defendants,** </br></br>  vs. </br></br>**TRANSPORTATION INSURANCE COMPANY,** and </br></br>**CONTINENTAL CASUALTY COMPANY,** </br></br>    **Defendants/** </br>    **Counterclaim Plaintiffs.** | </br></br></br></br></br></br></br></br>Case No. 4:06-CV-1760 |

## MEMORANDUM

This matter comes before the Court on the parties' motions. First, Plaintiffs/ Counterclaim Defendants Plaza Member III, LLC ("Plaza") and Land Dynamics, Inc. ("Dynamics") move (Doc. #45, filed July 23, 2007) for partial summary judgment. Next, Defendants/ Counterclaim Plaintiffs Transportation Insurance Company ("TIC") and Continental Casualty Company ("Continental") move (Doc. #54, filed Sep. 27, 2007) for the Court's reconsideration of its ruling on Defendants' motion for summary judgment.

### *I. Plaintiffs' Motion for Partial Summary Judgment*

In their motion (Doc. #45), Plaintiffs move for partial summary judgment with regard to Count VI of their Third Amended Complaint, wherein they seek declaratory judgment against Defendants.

Although summary judgment motions may be viewed as tools of "great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact," *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988); courts have repeatedly recognized the severity of summary judgment as a remedy, to be granted only in cases where the movant establishes his right to judgment with

such clarity so as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977); *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976).

In accord with the Court's analysis and Order (*see* Doc. # 52) partially granting Defendants' motion for summary judgment, the Court reiterates the existence of disputed material facts regarding (i) Plaintiffs' status as additional insureds, and/or (ii) the potential applicability of the "completed work" exception. Thereupon, the Court **HEREBY DENIES** Plaintiffs' motion (Doc. #45).

## *II. Defendants' Motion for Reconsideration*

Next, Defendants' motion for reconsideration (Doc. #54) urges the Court to re-evaluate its analysis regarding Defendants' motion for summary judgment. The Court **HEREBY GRANTS** Defendants' request.

On January 12, 2007, Defendants filed their motion for summary judgment (Doc. #10). Pursuant to the Local Rules for the United States District Court for the Eastern District of Missouri, Defendants' motion was accompanied with a statement of uncontroverted material facts.[FN1] In contravention of the Local Rule, Plaintiffs failed to file a formal response to Defendants' statement of facts, and Defendants now seek clarification as to whether the Court will deem their proffered facts admitted. Specifically, Defendants argue that Plaintiffs' failure to respond to paragraph 3[FN2] necessitates a finding that the property damage arose after the completion of the project, and thus, they are excepted from any liability. The Court disagrees.

> **FN1**. LOCAL RULE 7-4.01(E) provides: "A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.MO. L.R. 7-4.01(E).
>
> **FN2**. Paragraph 3 of Defendants' statement of uncontroverted material facts cites Plaza's correspondence with the project Subcontractor in which Plaza purportedly wrote that the condensation problem "arose after the fitness

2

center's construction." (Plaza Letter, May 6, 2005.)  Defendants' statement, however, goes a step further, providing: "A condensation problem at Wellbridge arose after the fitness center's construction *resulting in damages to the roof* completed by Old Style." (Doc. #11, filed Jan. 12, 2007 (emphasis added).)

The Local Rules facilitate judicial economy by absolving courts from "scour[ing] the record looking for factual disputes." *Northwest Bank and Trust Co. v. First Illinois Nat'l. Bank*, 354 F.3d 721, 725 (8th Cir. 2003) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994)); *Northwest Bank*, 354 F.3d at 725 (Local rules "reflect[] the aphorism that it is the parties who know the case better than the judge," and "exist[] to prevent a district court from engaging in the proverbial search for a needle in the haystack.").  In spite of their significant value, local rules are enforced at the courts' broad discretion.  *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 579 (8th Cir. 2006) (citing *Northwest Bank*, 354 F.3d at 724-25).  *See also Waldridge*, 24 F.3d at 923 ("Whether to apply such a rule strictly or to overlook any transgression is a matter we leave to the district court's discretion.").

Here, Plaintiffs did not properly respond to Defendants' statement of uncontroverted material facts; therefore, the Court may accept the same to be true.  *Reasonover*, 447 F.3d at 579; *Johnson v. Potter*, No. 4:07-cv-708, 2007 WL 4218976, at *3 (D.Mo. Nov. 29, 2007).  That having been said, and notwithstanding the Court's amazement over Plaintiffs' failure to acceptably address and/or oppose Defendants' factual averments; the Court does not find Defendants' proposed ruling to be reasonable, or its repercussions just.  Rather, the Court will hold Plaintiffs to the standards of Rule 56(e)[FN3] in affording weight to the parties' factual allegations.  Applying this standard, the Court hereby deems paragraph 3 admitted *in part*.  While the record demonstrates that the condensation problem occurred after the project's completion; Defendants' allegation that the problem arose after and *resulted in the damage to the roof* is a mischaracterization of their cited materials (*supra* note 2).

> **FN3**.  Under the Federal Rules, a motion for summary judgment may be supported by affidavits made on personal knowledge, setting out facts that would be admissible in evidence.  FED. R. CIV. P. 56(e)(1).  In response to the same, an opposing party must support its position (with affidavits or otherwise) by setting forth facts which establish a genuine issue for trial.  F.R.C.P. 56(e)(2).

Assuming the above to be true, that the condensation problem arose after the project's completion, the Court re-visits Defendants' motion for summary judgment.

Wellbridge's petition, asserted against Plaza, alleges in relevant part: (i) "as a result of [Plaza's and Architect's] failure to construct the roof according to the roof's design and standard, water damage occurred"; (ii) "[t]he mechanical and roof systems did not conform to [Plaza's] warranty; they were not in good operating condition and repair as of Wellbridge's date of occupancy"; and (iii) "[Plaza] failed to adequately construct the roof." Furthermore, Plaintiffs state that, although the condensation problem occurred after the project's completion, the defective condition of the roof, or "property damage," occurred sometime prior thereto.

As set forth in the Court's previous order, Missouri common law governs the parties' transaction. In that regard, courts equally apply principles of contract law to disputes involving insurance, *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007); ambiguities in insurance policies shall be construed in favor of the insured, *id.* (citing *Bellamy v. Pacific Mut. Life Ins. Co.,* 651 S.W.2d 490, 496 (Mo. 1983)); and defined terms within the insurance policy control the parties' agreement, *Risher v. Farmers Ins. Co.*, 200 S.W.3d 84, 88 (Mo.App. 2006) (citing *Bowan ex rel. Bowan v. Gen. Sec. Indemn. Co.*, 174 S.W.3d 1, 5 (Mo.App. 2005)).

Here, the TIC Policy expressly provides (in relevant part) that the coverage provided does not apply to property damage *occurring after* all work on the project has been completed, or after the property has been put to its intended use. The policy defines "property damage" to include loss of use (at the time of the "occurrence" that caused it). "Occurrence" is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions. *See also Columbia Mut. Ins. Co. v. Epstein*, No. ED 89577, 2007 WL 4233422, at *2-5 (Mo.App. Dec. 4, 2007) (discussing "property damage" and "occurrence" as boilerplate language).

Insurance policies written on an "occurrence" basis, like those involved at bar, provide coverage "for events that occur within the period of the policy regardless of whether the claim is made during or after that time period." *Todd*, 223 S.W.3d at 160. "It is well settled that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the alleged wrongful act was committed, but is the time *when the complaining party was actually damaged*." *Shaver v. Insurance Co. of North America*, 817 S.W.2d 654, 657 (Mo.App. 1991) (quoting *Kirchner v. Hartford Accident & Indemnity Co.*, 440 S.W.2d 751, 756 (Mo.App. 1969). (emphasis in original)). *Nationwide Ins. Co. v. Central Missouri Elec. Co-op., Inc.*, 278 F.3d

4

742, 747 (8th Cir. 2001) (occurrence-based policies limit coverage to " 'injuries arising during the policy period and ... exclude [s] from coverage injuries which occur subsequent to that period, even though the injuries may have been caused by acts done while the policy was in effect.' ") (quoting *Universal Reinsurance Corp. v. Greenleaf*, 824 S.W.2d 80, 84 (Mo.App. 1992)).

Defendants are correct in that the Court must limit their potential liability to damage which occurred prior to the project's completion. At this stage, however, such a finding does not preclude Plaintiffs' remaining prayer. To wit, for summary judgment purposes, the Court is not convinced that the alleged damage and/or occurrence did not involve injury prior to the project's completion. *See*, *e.g.*, *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, No. ED 87852, 2007 WL 2990459, at *5 -6 (Mo.App. 2007) (Florist had a duty to defend Plaintiff, where continuing damage was alleged as a result of Plaintiff's negligence, alleged damage led to diminution of the land's value, and alleged damage began during the policies' periods and continued until damage was discovered.); *Scottsdale Insurance Co. v. Ratliff*, 927 S.W.2d 531, 534 (Mo.App. 1996) (Where negligent termite inspection caused continuing damage to home, court interpreted injury as a continuing one, beginning at the time of the negligent inspection and continuing up until discovery. "... [A]s a result of the continuing harm, 'some of this damage necessarily occurred while the policy was in force.' ").

Lastly, Defendants ask the Court to reconsider its findings, which erroneously afforded equal consideration and treatment to Plaintiffs, regardless of their disparate status and relationship vis-à-vis Defendants. In its previous Order, the Court wrote:

> With respect to Transportation's policy, Plaintiffs have produced the affidavit of Subcontractor's President William Broeker who stated that he, on behalf of Subcontractor, agreed to include Contractor and Plaintiffs as additional insureds under his insurance policy with [TIC]. Plaintiffs' Exhibit 2, page 2. Additionally, the written letter from Contractor to Subcontractor requiring Subcontractor to "have your broker forward certificates of insurance covering your operations in accordance with Section 6 and 17 of this Subcontract, **including Owner and Contractor added to General Liability policy as additional insured**," and further stating that payment would not be made until the same was completed, leads this Court to find that there is evidence sufficient to present a submissible case on the issue of a written contract for Transportation's coverage. Although the original contract between Plaintiffs and Contractor provides that, "the Owner shall not require the Contractor to include the Owner, Architect, or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage," there are facts at issue which suggest that these terms may have been modified to require a different coverage plan than that which was described in the subcontract. Accordingly, this Court finds that there is a factual dispute as to whether there was a written contract

5

which included Plaintiffs as additional insureds with respect to the Transportation policy. (Doc. # 53: 6-7, filed Aug. 31, 2007.)

Regardless of the succeeding analysis regarding Plaintiffs' status as additional insureds given the existence of an oral agreement, the Court's finding is proper. The contracts and/or relevant documents are inconsistent in identifying the parties thereto and, at this stage, may be reasonably applied to Plaza or Dynamics. Notably, (i) Mr. Broeker (*supra*) testified that the project Subcontractor agreed to include "the owner of the subject property" as an additional insured under the TIC Policy; (ii) the project Contractor allegedly required Subcontractor to include the "Owner" as an additional insured on the general liability policy; and (iii) sworn, uncontroverted testimony indicates that Plaza is the owner of the disputed property. Despite the fact that the TIC Certificate only identified Dynamics as an "additional insured," there is sufficient evidence to present a submissible case on the issue of a written contract as between TIC and each of Plaintiffs. (*Compare also* Construction Contract (naming Plaza as "Owner"); *with* Subcontract (naming Dynamics as "Owner").)

Accordingly, the Court **HEREBY ADOPTS**, **RE-INCORPORATES**, and **SUSTAINS** its previous Order (Doc. #52).

**S**o Ordered.

**D**ated this 23rd day of January, 2008.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**